## PERISS *v.* NEVADA INDUSTRIAL COMMISSION

No. 3021

July 31, 1933.                                   24 P. (2d) 318.

*George L. Sanford,* for Appellant:

*Albert Duffill* and *Harry H. Austin,* for Respondent:

# OPINION

By the Court, COLEMAN, J.:

Joseph Periss brought suit against Nevada industrial commission to recover damages under the workmen's compensation act for a bilateral inguinal hernia alleged to have been sustained while in the employment of Six Companies Inc.

On November 30, 1932, the trial judge filed his written decision, ordered judgment for plaintiff, and directed that counsel for plaintiff prepare findings and submit them for consideration. On December 12, 1932, counsel for defendant filed notice of motion for a new trial. Defendant has appealed from the judgment and the order denying a new trial.

We will refer to the parties as plaintiff and defendant, as in the trial court.

It is the contention of plaintiff that on August 8, 1931, while in the employment of said Six Companies Inc., on the Hoover dam project, he slipped and fell, resulting in a blow in the abdomen by a jack hammer, which caused a hernia. Plaintiff also contends that, after he had been operated on for the hernia mentioned, and while in a weakened condition, he was employed by said company on said project on the Arizona side of the Colorado river, and while so employed in the month of

December 1931, he suffered a recurrence of said hernia, which caused him great pain and renders him unable to do any kind of work. A claim was filed against defendant by the plaintiff, which was rejected by defendant on the ground that no accident was shown and that the disability claimed was the result of the recurrence of an old hernia sustained in 1928; also that in no event is it liable for the injury sustained in Arizona. We think a more detailed statement of the issues unnecessary.

The first point urged by defendant is that the evidence is insufficient to sustain the conclusion of the court to the effect that the plaintiff sustained a temporary total disability on August 8, 1931, entitling plaintiff to recover judgment for $62.40 per month from that date to September 14, 1932, or in any amount.

Counsel for defendant bases considerable stress upon rule I adopted by it pursuant to section 12 of the act creating the Nevada industrial commission (section 2693 N. C. L.), which reads: "Real traumatic hernia is an injury to the abdominal (belly) wall of sufficient severity to puncture or tear asunder said wall, and permit the exposure or protruding of the abdominal viscera or some part thereof. Such an injury will be compensated as a temporary, total disability, and as a partial permanent disability, depending upon the lessening of the injured individual's earning capacity."

Counsel for defendant quotes from the decision of the trial court, which in this case is accepted as a formal finding, as follows:

"I think the evidence established that the plaintiff did sustain a hernia on August 8th, 1931, and that it was the result of a blow in the abdomen from a jack hammer. * * * That being the case, the hernia sustained by defendant on August 8, 1931, was traumatic. The meaning of traumatic hernia, as I understand it, is one caused by an injury.

"No attempt was made in this case to have competent medical authority distinguish for the Court the different classes of hernia or the different character in which they may and do occur. The Court is entirely in the

dark as to whether hernia occurs in which the outside wall of the abdomen is broken and the viscera protrudes through the extreme outer layer of the skin.

"The evidence introduced establishes that the hernia caused a bulging of the abdominal wall near the groin; that a bulging or large lump occurred caused by a protrusion of the viscera through the wall of the containing cavity."

Counsel then states:

"The evidence introduced and stated by the court places the hernia squarely in the category of 'all other hernias' covered by rules II and III. If it did not then there would be no reason for having rule I at all. The claimed injury was from a 'sudden effort or severe strain or blow.'

"Yet the court, without evidence, but assuming judicial notice that 'real traumatic hernia' does not occur as defined in Rule I, made an award on its own conception of 'real traumatic hernia.'"

It seems to be the contention of counsel that by rule I the commission sought to define or legislate as to what constitutes a "traumatic hernia." Counsel for plaintiff takes the position that section 12 of the act mentioned merely empowers the defendant to adopt rules of procedure, but that in no event is the rule in question susceptible to the interpretation placed upon it by counsel. We are favorably inclined to both of the ideas advanced by counsel for the plaintiff, but find it necessary to determine the latter one only.

The supreme court of Kentucky, in Straight Creek Fuel Co. v. Hunt et al., 221 Ky. 265, 298 S. W. 686, 687, defined the word "traumatic" to our entire satisfaction, as follows:

" 'The word "trauma" is defined in Black's Legal Dictionary as a "wound; any injury to the body caused by external violence," and "traumatic" is defined as "caused by or resulting from a wound or any external injury." In Webster's New International Dictionary the word "trauma" is defined as "a wound or injury," "traumatic" as "pertaining to or due to a

wound or injury." The Century Dictionary defines "traumatic" to be "an abnormal condition of the human body produced by external violence as distinguished from that produced by poisons, symotic infections, and habits and other less evident causes." Webster's Unabridged Dictionary defines "traumatic" as "a wound or injury directly produced by causes external to the body; also violence producing a wound or injury as rupture of the stomach by traumatism." '

"Clearly, from these definitions, an internal injury resulting from an external force is a traumatic injury. * * * "

Those not satisfied with the authority mentioned might consult Text Book of Surgery, by Bancock, p. 1167; Legal Anatomy and Surgery, by Maloy, p. 85; Metcalf v. Department of Labor, etc., 168 Wash. 305, 11 P. (2d) 821; Cavalier v. Chevrolet Motor Co. of New York, 189 App. Div. 412, 178 N. Y. S. 489.

It is very evident that the commission in adopting rule I intended that the word in question should receive its commonly accepted meaning; hence we are led to conclude that the commission had in mind an injury to the abdominal (belly) wall of sufficient severity as to so result in the exposure or protruding of some part of the abdominal viscera. After a careful consideration of the rule, in the light of the authorities, we do not see how we can possibly come to any other conclusion.

Does the evidence sustain the finding that the plaintiff suffered an injury on August 8, 1931, resulting in a traumatic hernia? We are unable to find evidence in the record showing that he did. The evidence shows that the plaintiff was injured on the date mentioned by being struck with a jack hammer, and the evidence also shows that as a result thereof the plaintiff experienced soreness and some pain and a swelling in the groin, but there is no testimony that such accident resulted in an injury to the abdominal (belly) wall of sufficient severity to result in the exposure or protruding of the abdominal viscera, or any part thereof. The

mere fact that one receives a severe injury in the groin, causing soreness, pain, and a swelling, is not sufficient to show that a traumatic hernia resulted.

The plaintiff did not testify that the abdominal viscera or any part of it protruded through the belly wall. We doubt if he were qualified to so testify, but he did not undertake to do so. Neither he nor anyone else was asked to testify on that point. The nearest approach to such testimony was that given by Dr. McDaniel and Dr. Muller; yet their testimony does not aid the plaintiff. Dr. McDaniel testified that on or about August 17, 1931, the plaintiff called at his office, and that " * * * he had a hernia at that time and he had it two years before." Nowhere does the doctor tell what kind of a hernia it was. So far as his testimony is concerned, it may have been a hernia for which no recovery could be had.

Dr. Muller testified that at the time of the trial of the case in September 1932, he examined plaintiff and found a left inguinal hernia. This does not tend to show that the hernia he found was a result of the accident of August 1931.

No doubt the doctors who examined the plaintiff at Boulder City shortly after the injury was sustained and those who operated on him a few weeks after could have shown the nature of the hernia, but they did not testify.

The judgment and order must be reversed, with instructions to grant the plaintiff a new trial.

It is so ordered.